# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JUANITA ALEMAN & RAUL ALEMAN**<br>**Plaintiffs** | ) ) ) |
| v. | ) ) ) |
| **ELLINGTON AUTO SALES &**<br>**FINANCING, LLC and**<br>**AUTOFLOW FINANCING, LLC**<br>**Defendants** | ) ) ) ) ) ) |

CIVIL ACTION

COMPLAINT   3:10C V1650SRU

**310CV 1650**

**OCTOBER 18, 2010**

## I. INTRODUCTION

This is a suit brought by two consumers residing in Connecticut regarding the purchase and sale of a motor vehicle ("the Vehicle") pursuant to a retail installment sales contract ("the Contract"). Plaintiffs bring this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from Defendant Ellington Auto Sales & Financing, LLC ("Ellington") and Defendant Autoflow Financing, LLC ("Autoflow").

The Plaintiffs claim that Ellington violated the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and the Connecticut Retail Installment Sales Finance Act, C.G.S. § 36a-771(b) ("RISFA"), in the sale of the Vehicle to Plaintiffs; Ellington also violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), and it committed breach of implied warranty of merchantability by selling Plaintiffs a vehicle that was not in merchantable condition and is consequently also liable under the Magnuson-Moss Federal Warranty Act (15 U.S.C. §§ 2301-2312).

Plaintiffs seek their damages, revocation of acceptance of the Vehicle, and declaratory relief regarding the underlying retail installment sales contract entered into by Plaintiffs to purchase the Vehicle.  Defendant Autoflow retained benefit of the Contract notwithstanding having been given notice of these violations, and is liable pursuant to Conn. Gen. Stat. § 36a-786 as the holder of that contract and under RISFA for the willful violations of Ellington. Plaintiffs also claim that Autoflow violated CUTPA and the Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 by collecting payments from Plaintiffs' account in contravention to the deficiency waiver addendum to the Contract

## II. PARTIES

1.      Plaintiffs are husband and wife residing in New Britain, Connecticut.

2.      Defendant Ellington is a Domestic Limited Liability Company that operates an automobile dealership in Vernon, Connecticut.

3.      Defendant Autoflow is a domestic limited liability company and sales finance company licensed to do business in Connecticut that accepts the assignment of finance contracts from Connecticut car dealerships.

## III. JURISDICTION

4.      Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 2310(d)(1)(B) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5.      This court has jurisdiction over Ellington because it regularly conducts business in this state.

2

6. This court has jurisdiction over Autoflow because it regularly conducts business in Connecticut.

7. Venue in this court is proper, because the Plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

8. On or around February 25, 2010, Plaintiffs visited Ellington and expressed interest in purchasing a 1999 Mercury Cougar ("the Vehicle").

9. Ellington charged Plaintiffs a purchase price of $7,295 for the Vehicle.

10. Although the purchase was purportedly made on an "As Is" basis, Ellington entered into a service contract with Plaintiffs at a cost of $1,800.

11. Ellington prepared the Contract in both Plaintiffs' names, but only Juanita Aleman signed the Contract.

12. Ellington and Autoflow required that Plaintiffs pay an additional $563.64 for a charge that it labeled "VSI" as a condition of the financing of the vehicle.

13. The Contract's Truth in Lending disclosure showed a cash down payment of $1,700; however, only $1,000 was requested by Ellington and paid by Plaintiffs at the time of the transaction.

14. Raul Aleman entered into a separate promissory note with Ellington to pay the remaining $700.

15. The Contract was assigned to Autoflow for valuable consideration.

16. When they purchased the Vehicle, Plaintiffs signed a form authorizing Autoflow to automatically deduct from their account payments made under the Contract.

3

17. At the time Ellington sold the Vehicle to Plaintiffs, the Vehicle had mechanical problems, however, Ellington had assured Plaintiffs that it would fix those problems prior to delivering the Vehicle to them.

18. Subsequent to its delivery to Plaintiffs, the Vehicle suffered multiple mechanical problems; Plaintiffs took the Vehicle to Ellington to repair these problems pursuant to the service contract that was sold with the Vehicle, but Ellington failed to adequately remedy the problems.

19. On or around July 28, 2010, while the Vehicle was in Ellington's possession for repair, it was damaged by a fire and declared a total loss.

20. The deficiency waiver addendum to the Contract provided that, in the event of a total loss, the loan amount would be reduced by the difference between the balance and the Actual Cash Value, which equaled the greater of the NADA value or the insurance settlement.

21. Nevertheless, Autoflow continued to withdraw payments from Plaintiff's account and, when Plaintiffs objected to the withdrawal of those payments, Autoflow told Plaintiffs that it would continue doing so until it received insurance proceeds for the Vehicle.

## V. COUNT ONE
## TRUTH IN LENDING ACT
### (Both Defendants)

22. Plaintiffs incorporate Paragraphs 1-21.

23. Ellington violated TILA by failing to provide include the pick-up payments as part of the required periodic payments and by inaccurately including those payments as part of the downpayment.

4

24.    Additionally, Ellington violated TILA by including the charge for VSI as part
of the amount financed instead of including it as part of the finance charge and by
understating the annual percentage rate by reason of the mischaracterization of the VSI
charge. This violation was apparent on the face of the contract, and Autoflow is
therefore liable for this violation under 15 U.C.S. § 1641.

25.    The defendants are liable to Plaintiffs for their actual damages pursuant to
15 U.S.C. § 1640(a)(1), plus statutory damages of $1,000, plus a reasonable attorney's
fee pursuant to 15 U.S.C. § 1640(a)(3).

## VI. COUNT TWO
## RETAIL INSTALLMENT SALES FINANCING ACT
### (Both Defendants)

26.    Plaintiffs incorporate Paragraphs 1-21.

27.    The Contract to purchase the Vehicle constituted a retail installment sales
contract within the meaning of Conn. Gen. Stat. § 36a-770(c)(12), and the plaintiffs are
retail buyers within the meaning of Conn. Gen. Stat. § 36a-770(c)(11).

28.    Ellington's TILA violations and its failure to have Raul Aleman sign the
Contract constituted violations of the Retail Installment Sales Financing Act ("RISFA")
pursuant to Conn. Gen. Stat. § 36a-771(b).

29.    Furthermore, if Ellington had properly included the $563.64 VSI charge as
part of the finance charge, the interest rate of the Contract would have been above the
maximum 19% interest rate permissible under RISFA Conn. Gen. Stat. § 36a-
772(a)(3)(C), which violation of RISFA was conspicuous on the face of the Contract and

therefore entitles Plaintiffs to claim $1,000 in statutory damages plus a reasonable attorney's fee.

30.     Ellington's violations of RISFA were willful violations, and Autoflow has retained the benefit of the Contract notwithstanding its knowledge of the violations, thereby entitling Plaintiff to an order pursuant to Conn. Gen. Stat. § 36a-786 that there is no entitlement to a finance charge under the Contract and ordering a refund of all finance charges collected by Autoflow.

## VII. COUNT THREE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Both Defendants)

31.     Plaintiffs incorporate Paragraphs 1-21.

32.     Ellington is a "merchant" as that term is defined in Conn. Gen. Stat. §42a-2-104.

33.     The Vehicle constitutes "goods", as that term is defined in Conn. Gen. Stat. §42a-2-105.

34.     A warranty that the vehicle was in a merchantable condition was implied by law in the sale of the Vehicle by Ellington to Plaintiff pursuant to Conn. Gen. Stat. §42a-2-314.

35.     There was a breach of the implied warranty of merchantability in that the Vehicle would not pass in trade under its description without objection or it was not fit for the purpose for which motor vehicles are ordinarily used or both.

36.     Defendants are liable to Plaintiffs for their damages pursuant to Conn. Gen. Stat. § 42a-2-714 plus consequential damages pursuant to Conn. Gen. Stat. § 42a-2-715.

6

## VII. COUNT FOUR
## MAGNUSON-MOSS WARRANTY ACT
## (Both Defendants)

37.     Plaintiffs incorporate Paragraphs 1-21.

38.     The Vehicle is a consumer product, as that term is defined in § 2301(1) of

the Magnuson-Moss Federal Warranty Act (15 U.S.C. §§ 2301-2312), and was

manufactured after July 4, 1975.

39.     Ellington is a warrantor, as that term is defined § 2301(5) of Magnuson-

Moss.

40.     Plaintiffs are consumers, as that term is defined § 2301(3) of Magnuson-

Moss.

41.     Ellington violated the Magnuson-Moss Warranty Act by selling the Vehicle

"As Is" to Plaintiffs even though Ellington sold a $1,800 service contract to Plaintiffs.

42.     Furthermore, Ellington failed to comply with its obligations under the

implied warranty of merchantability, and the defendants are therefore liable to the

Plaintiffs for their damages, reasonable attorney's fees, and costs pursuant to 15 U.S.C.

§ 2310(d).

## VIII. COUNT FIVE
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (Both Defendants)

43.     Plaintiffs incorporate Paragraphs 1-21.

44.     The aforementioned actions of Ellington constituted an unfair trade practice in violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a *et seq.*, in that these actions were immoral, unethical, oppressive and unscrupulous.

45.     The actions of Ellington, acting through its duly authorized employees, constituted an unfair trade practice in violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a *et seq.*, in that the actions of Ellington's employees for which Ellington is liable offend public policy.

46.     The actions of Ellington, as described above, have caused the Plaintiffs to suffer an ascertainable loss, including but not limited to the loss of the use of their Vehicle on account of Ellington's breach of implied warranty of merchantability. Plaintiffs also suffered emotional distress, aggravation, and embarrassment because of Ellington's actions.

## IX. COUNT SIX
## CREDITOR COLLECTIONS PRACTICES ACT
### (As to Autoflow only)

47.     Plaintiffs incorporate Paragraphs 1-21.

48.     By continuing to withdraw payments from Plaintiffs' account after the Vehicle was declared a total loss on account of fire damage and before it received insurance proceeds for the Vehicle, and by informing Plaintiffs that it was entitled to withdraw those payments, Autoflow violated the Creditor Collection Practices Act, Conn. Gen. Stat. § 36a-645 and Conn. Agencies Reg., §§ 36a-647-5 and 36a-647-6.

49.     For Autoflow's unfair act, Plaintiffs seek their damages, statutory damages, and attorney's fees and costs pursuant to the Public Act No. 07-176.

8

## X. COUNT SEVEN
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (As to Autoflow only)

50.     Plaintiffs incorporate Paragraphs 1-21 and paragraph 48.

51.     The aforementioned actions of Autoflow constituted an unfair trade practice in violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a *et seq.*, in that these actions were immoral, unethical, oppressive and unscrupulous.

52.     The actions of Autoflow constituted an unfair trade practice in violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a *et seq.*, in that its actions offend public policy.

53.     The actions of Autoflow, as described above, have caused the Plaintiffs to suffer an ascertainable loss, including but not limited to the $290.68 in payments that Autoflow wrongfully withdrew from Plaintiffs' account and retained after the Vehicle was destroyed by a fire and declared a total loss.

54.     Plaintiffs also suffered emotional distress, aggravation, and embarrassment because of Autoflow's actions.

**Wherefore, Plaintiffs claim**, actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $1,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); damages pursuant to C.G.S. § 42a-2-714; damages, reasonable attorney's fees, and costs pursuant to 15 U.S.C. § 2310(d); statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); actual damages, statutory damages of $1,000, and reasonable attorney's fees and costs pursuant to the Public Act No. 07-176; an order declaring that Autoflow is not entitled to a finance

9

charge under the Contract and ordering a refund of all finance charges collected; an

order from the Court ordering Ellington and Autoflow to cease and desist from engaging

in unfair and deceptive trade practices; such other further relief to which Plaintiffs are, at

law, or in equity and by statute entitled to against Ellington and Autoflow

PLAINTIFFS, JUANITA ALEMAN &RAUL ALEMAN

By:

Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT 06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com
mwgraeber@consumerlawgroup.com

10