UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEMAN, et al.,<br>        Plaintiffs,<br><br>             v.<br><br>ELLINGTON AUTO SALES &<br>FINANCING, LLC, et al.,<br>        Defendants. | No. 3:10cv1650 (SRU) |

**RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This case arises from an auto sale between the plaintiffs, Juanita and Raul Aleman, and the defendants, Ellington Auto Sales & Financing, LLC ("Ellington") and Autoflow Financing, LLC. The parties have stipulated to the facts necessary to resolve the cross-motions for partial summary judgment on the Truth in Lending Act ("TILA") claim. Oral argument on the matter was held on August 9, 2012. For the reasons that follow, the plaintiffs' motion for partial summary judgment, doc. 38, is **DENIED**. The defendants' motion for partial summary judgment, doc. 39, is **GRANTED**.

**I.    Background**

The parties have stipulated to the following facts: On February 25, 2010, the Alemans executed a retail purchase order to buy a 1999 Mercury Cougar from the defendants. At that time, the Alemans only had $1,000 available for a down payment on the vehicle. Ellington required a down payment of $1,700 in order for the Alemans to purchase the vehicle. Ellington offered to finance the $700 difference between the money available to the Alemans at the time of purchase and the $1,700 down payment it required. Thereafter, on February 25, the Alemans paid Ellington $1,000 in cash.

On March 2, 2010, the Alemans and Ellington entered into a Retail Installment Sale Contract ("RISC") for the sale of the vehicle. The Alemans and Ellington also entered into a separate installment note pertaining to a $700 loan that obligated the Alemans to make fourteen weekly payments of $50, beginning on March 10, 2010.

The Truth in Lending disclosures in the RISC listed the down payment amount as $1,700. That amount included the $700 payable under the Note as part of the down payment. The disclosures did not include the $700 payable under the Note as part of the "Amount Financed." The payment schedule on the RISC did not include the fourteen weekly installment payments of $50 payable under the Note.

The Note charged zero interest. The due date of the final payment on the Note was June 16, 2010. The Alemans' second payment under the RISC was due on or before March 17, 2010.

Over the course of the fourteen-week payment period under the Note, the Alemans made each payment due. The Alemans did not pay the total $700 balance of the Note on or prior to March 17, 2010.

At no time following the purchase did the Alemans raise any questions with Ellington or Autoflow about the amount of payments due or the payment schedule. The amount of the Finance Charge on the RISC was $2,580.88.

**II.     Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving parties and must resolve all ambiguities and draw all reasonable inferences against the moving parties. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving parties may not rest upon the mere allegations or denials of their pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving parties submit evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving parties have failed to make a sufficient showing on an essential element of their case with respect to which they have the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as

to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movants' burden satisfied if they can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## III.     Discussion

The TILA dispute in this case centers on the two different loan agreements the Alemans entered into: the RISC (for the vehicle), and the Note (for the remaining $700 needed for the down payment). Neither side appears to contest that the terms of each contract were disclosed to the Alemans. At issue is whether the TILA required the terms of the Note and the RISC to be disclosed in the same document.

   A.  Down Payment Structure

At the outset, it is important to define the context of the discussion. There are two different ways a down payment can be paid. First, the buyer can provide the full down payment at the time the sale closes. Second, the buyer can provide less than the full down payment at the time the sales closes, and agree to provide the rest at a later date. The second scenario involves a deferred down payment.

The issue turns on whether a formal, documented loan of a portion of the down payment falls in the first category or the second category. I conclude that it falls in the first category, because no portion of the down payment was deferred. The Alemans provided the full down payment to the seller at the time of closing; some of the down payment was in cash, and some of it was in the form of the Note, but all of it was provided to the seller. The fact that the full down payment was provided would seem obvious if the lender of the down payment had been a third

party. In such a situation, the Alemans undoubtedly would have paid all of the down payment at closing; the fact that they had done so by taking out a loan for a portion of the down payment would be irrelevant. The fact that the lenders in this case were the sellers does not change that analysis. The full amount of the down payment was provided to the seller at the closing of the sale, albeit partially in the form of a documented loan. A deferred down payment, in contrast, involves a seller agreeing to accept some or all of the down payment at a date after the closing and without the formality of a note.

### B. Multiple Transactions

The regulations interpreting and implementing the TILA are known as "Regulation Z." The Federal Reserve Board's Official Staff Commentary[1] on Regulation Z allow the defendants to disclose the terms of the Note separately from the disclosures pertaining to the RISC:

> Creditors have flexibility in handling credit extensions that may be viewed as multiple transactions. For example:
> . . .
> The separate financing of a downpayment in a credit sale transaction may, but need not, be disclosed as 2 transactions (a credit sale and a separate transaction for the financing of the downpayment.).

12 C.F.R. Pt. 226, Supp. I, Subpt. C, § 17(c)(1) cmt. 16.

The Alemans argue that Comment 16 does not apply to this case, because the credit extensions at issue cannot "be viewed as multiple transactions." The Alemans note that "Ellington was the seller and the creditor, and the [] Payments were part of the purchase price of the Vehicle financed under the RISC." Pl.'s Partial Mot. for Summ. J. at 10.

---

[1] Both sides agree that the Official Staff Commentary should be considered binding on this court. "Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive. . . ." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

In response, the defendants cite *Rendler v. Corus Bank*, 272 F.3d 992 (7th Cir. 2001). In that case, the plaintiffs had received two mortgages when purchasing one piece of property. "The first loan was a closed-end transaction in the form of a fully amortizing note for eighty percent of the property's value, and the second loan was a home equity line of credit." *Id.* at 994. Each loan had its own separate disclosure statement. *Id.* at 995. The Court held that the separation of the two disclosure statements did not violate the TILA. *Id.* at 998-99. In so holding, the Court determined that the loans at issue constituted "multiple transactions," and noted that the "TILA anticipates situations where two parties will conduct multiple transactions necessitating multiple disclosures to achieve one goal." *Id.* at 997. In attempting to distinguish *Rendler*, the Alemans note that the two loans at issue in that case had substantial differences. That is also true here, however; the two loans have different repayment schedules and interest rates.

The Alemans next claim that the loans at issue in this case cannot be treated as "multiple transactions" because the defendants engaged in "loan splitting." "Loan-splitting has been described as a situation where a debtor wants, requests and expects to get a single loan consummated in a single transaction, but the lender instead documents and makes disclosures for the loan as if it were two separate transactions." *Banks v. Wells Fargo Bank, N.A.*, Civ. Action No. 09-4948, 2011 WL 5555728, at *10 n. 21 (E.D. Pa. Aug. 17, 2011) (internal citations and quotation marks omitted).

A lender does not engage in loan splitting when it structures a transaction "as two separate loans provided the borrower's expectations are not frustrated." *Devine v. America's Wholesale Lender*, Civ. Action No. 07-3272, 2008 WL 4367489, at *2 (E.D. Pa. Sept. 25, 2008). In *Devine*, the Court determined that there was no evidence of loan splitting, even though the

plaintiffs had initially requested a single loan.  The Court noted that there was no evidence that the plaintiffs were told their request for a single loan had been approved, and there <u>was</u> evidence that the defendants had made a counteroffer of two loans.  *Id.* at *3.

There is similarly no indication that loan splitting occurred here.  Although the Alemans may have originally set out to buy a car with one loan, when they learned that the required down payment was more than they could afford, they made the decision to enter into two loans rather than wait until they had the money necessary to pay the down payment.  There is no indication that the defendants surreptitiously divided what the Alemans' intended to be one loan into two, or that the Alemans did not expect to receive two loans.

The very text of Comment 16 indicates that this was the kind of "multiple transaction" its drafters envisioned.  Comment 16 provides that "a credit sale and a separate transaction for the financing of the downpayment" may be treated as two transactions.  That is what happened in this case.  Given that these transactions also had different interest rates and repayment schedules, I have no difficulty concluding that they "may be viewed as multiple transactions" pursuant to Comment 16.

  C. <u>Pick-Up Payments</u>

The Alemans next argue that this case is more properly analyzed in line with those provisions of Regulation Z pertaining to deferred down payments, or "pick-up payments." Regulation Z provides, in part: "A deferred portion of a down payment may be treated as part of the down payment if it is payable not later than the due date of the second otherwise regularly scheduled payment and is not subject to a finance charge."  12 C.F.R. § 226.2(a)(18).  The first condition was not met here, because the Note was not fully payable until June 16, 2010 – later than the second otherwise regularly scheduled payment, which was due on March 17, 2010.

The Alemans next point to Commentary on Regulation Z. According to that Commentary:

> i. Creditors may treat the deferred portion of the down payment, often referred to as pick-up payments, in a number of ways. If the pick-up payment is treated as part of the down payment:
>
>> A. It is subtracted in arriving at the amount financed under § 226.18(b)
>>
>> B. It may, but need not, be reflected in the payment scheduled under § 226.18(g).
>
> ii. If the pick-up payment does not meet the definition (for example, if it is payable after the second regularly scheduled payment), or if the creditor chooses not to treat it as part of the down payment:
>
>> A. It must be included in the amount financed.
>>
>> B. It must be shown in the payment schedule.

12 C.F.R. § 226.2 Pt. 226, Supp. I § 226.2(a)(18)(2). The Alemans argue that subsection ii must apply because payments under the Note extended beyond the second payment under the RISC. They then argue that the language of subsection ii indicates that the loan disclosures for the RISC and the Note must be made in the same document.

The Alemans' argument fails, because this provision of the Commentary simply does not apply in this case. By its terms, the Commentary cited by the Alemans only applies to "the deferred portion of the down payment." One purpose of subsection ii is to require that any portion of the down payment that is actually loaned to the buyer (because it has been deferred past the second regular loan payment) be treated as a loan and be subject to the required disclosures. As noted above, the Alemans formally financed a portion of the down payment but did not defer any portion of the down payment, and thus, this provision of the Commentary has no bearing on the facts of this case. All amounts actually loaned to the Alemans were the subject

of appropriate disclosures.

    D. <u>Grouping</u>

Finally, the Alemans argue that the transactions at issue here are governed by 12 C.F.R. § 226.17.  That provision states:  "The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 or § 226.47."  According to the Alemans, the requirement that disclosures be "grouped together" requires that the statutory disclosures for both loans be included in the same document.  I disagree.  I believe it is clear that this regulation instead requires that all disclosures pertaining to each transaction be grouped together within the loan documents, i.e., set apart from other information clear stated in the loan documentation.  Because there were multiple transactions here, section 226.17 applies separately to each loan, and no section of Regulation Z conflicts with Comment 16.

**IV.**  **Conclusion**

For the reasons stated above, Comment 16 controls the outcome of this case, and under that Comment, the defendants were not required to make disclosures pertaining to the Note and the RISC in a single document.  As a result, there was no TILA violation, and the Alemans' motion for partial summary judgment, doc. 38, is **DENIED**.  The defendants' motion for partial summary judgment, doc. 39, is **GRANTED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 21st day of August 2012.

                                                        /s/ Stefan R. Underhill
                                                        Stefan R. Underhill
                                                        United States District Judge